JEREMIAH GROUT & another *vs.* LUTHER HILL & another.

Where goods are forwarded under a contract for their sale, with an agreement that if, on arrival, they prove unsatisfactory, they may be returned by the consignee, and a bill of sale thereof is sent by mail and received by him, but he, before he knows of the arrival of the goods, or pays their price or the freight thereon, ascertaining that he is insolvent, executes a bill of sale thereof to the consignor, and delivers it to a third per-son for him; this operates as a stoppage *in transitu* of the goods or a refusal to com-plete the contract of sale; and the assignee in insolvency of the consignee cannot re-cover the goods or their value from the consignor, nor from such third person claiming under subsequent purchase from him, although such person supposed the bill of sale back to be made by way of preference.

ACTION OF TORT for the conversion of a quantity of leather, claimed by the plaintiffs as assignees of Washington Hill, an insolvent debtor. The answer denied the plaintiffs' property and the conversion. The case was submitted to the court of com-mon pleas upon the following facts:

In December 1853, Washington Hill resided and was a dealer in leather in Spencer in this county; on the 16th of that month, being in New York for the purpose of buying leather, was recommended, by those of whom he had usually purchased, to Loup & Co., leather dealers, to whom he was a stranger, as a person in good credit; and found in their warehouse such leather as he wanted, but, as Loup & Co. could not conveniently put it

up then, he did not select and identify the leather, but it was agreed between him and Loup & Co. that they should send to him at Spencer the quantity which he wished, of the kind and quality which he had looked at, and that he might examine it upon its arrival, and, if it did not prove satisfactory, return it; but if it should be satisfactory, he should keep it, and send them his note for the price, payable in six months after the sale. Loup & Co. immediately forwarded the leather, which is the subject of this action, by railroad, to Spencer, where it arrived on the 20th of December, and Hill, at or before that day, having returned from New York, received by mail at Spencer a bill of sale of the leather from Loup & Co. to him.

Washington Hill, the day after his return, requested his son Luther, one of the defendants, to assist him by indorsing his notes, which Luther declined to do without first making an investigation of Washington's affairs. They made such an investigation, and the result was that Luther was of opinion that Washington was insolvent, and advised him to go into insolvency. Washington believed himself solvent when he returned from New York; but was satisfied, by the investigation, of his insolvency, and was in fact insolvent when it took place, which was within three days after his return. Washington informed Luther that he had made a contract for the purchase of leather from Loup & Co., and had obtained the leather by means of the representations of others as to his credit; and Luther thereupon advised him " to bill the leather back "; and Washington executed a bill of sale of the leather to Loup & Co. on the back of the bill which he had received from them, and delivered it to Luther for them, and requested him to inform them by letter of the circumstances of his insolvency, and that he had executed the bill of sale which Luther had for them, and that the leather was subject to their order; and Luther, pursuant to these instructions, wrote a letter to Loup & Co. at New York, which was received by them in due course of mail; but did not send the bill, but kept it for them. Neither Washington nor Luther knew of the arrival of the leather at Spencer until after this letter was sent, and Washington never saw the leather after its

arrival, nor gave any note for it. The freight bills of Washington Hill for the month of December, including the one for this leather, were paid by Luther early in January, without any express orders. Washington's freight bills were usually paid monthly, sometimes by himself, and sometimes by Luther on his behalf, and his freight was always delivered by the railroad company at this station. When Luther paid the freight on this leather, he did not take the leather away, but gave directions that it should be delivered to any one who should call for it.

Washington Hill filed his petition for the benefit of the insolvent laws on the 28th of December 1853; the first publication of notice was on the next day; and the first meeting of his creditors was held on the 12th of January, when the plaintiffs were duly chosen his assignees.

Loup & Co. made no reply by letter to Luther Hill's letter to them, and did no act indicating their assent to or acceptance of what had been done by the Hills as above stated; but between the 1st and 12th of January, Loup came to Spencer and received from Luther Hill the bill of sale executed and delivered to Luther by Washington with that object; and the defendants purchased the leather from Loup & Co., and gave their note therefor at six months; and Loup & Co. gave a bill of sale thereof to the defendants, dated back to correspond with the one given by them to Washington Hill. Luther Hill, when he advised his father "to bill back the leather" to Loup & Co., supposed that his father had made an absolute and unconditional purchase of it, and given his note for it at six months, (that being the usual term of credit,) and that the bill of sale by his father to Loup & Co. was in payment of his debt to them, and with a view of giving them a preference over his other creditors.

The leather was duly demanded before this action was brought; and the defendants had converted it to their own use. The other defendant is a copartner of Luther Hill, and a party and privy to his acts, so as to be liable as far as he is, and no further. On the above facts, the court of common pleas, *Byington*, J. presiding, gave judgment for the defendants, and the plaintiffs appealed to this court.

*G. F. Hoar*, for the plaintiffs. I. The leather was never legally conveyed by Washington Hill to Loup & Co. The transaction was either, 1st, A conveyance without consideration, and so void against the assignees; or, 2d, a conveyance in consideration of the extinguishment of an existing debt, and so a fraudulent conveyance, within *St.* 1841, *c.* 124, § 3; or 3d, a reconveyance by Washington Hill to Loup & Co., not accepted by them before Hill's insolvency, and so ineffectual. *Barnes* v. *Freeland*, 6 T. R. 80. Luther Hill cannot be deemed an agent for Loup & Co. The execution of the bill of sale by Washington Hill and the acceptance by Loup & Co. amounted to a waiver of Hill's right to reject the leather; and Loup & Co. must be presumed to claim under the instrument which they accepted, and not adversely to it. *Sprague* v. *Branch*, 3 Cush. 575. *Naylor* v. *Dennie*, 8 Pick. 198. *Lane* v. *Jackson*, 5 Mass. 157. *Siffken* v. *Wray*, 6 East, 371. The facts show an absolute contract of sale to Washington Hill, with an agreement that he might rescind it, if the article, on arrival, should prove unsatisfactory in quantity or quality; and Hill never exercised the right of rescission for that cause. The condition of payment by note must be held to have been waived, both by the acceptance of the bill of sale from Hill—see cases above cited—and by not demanding the note or resuming possession within a reasonable time. *Smith* v. *Dennie*, 6 Pick. 262.

II. Here was not, nor could be, any right of stoppage *in transitu*. For, 1st, the transit had terminated; the goods had reached Spencer, the place of their ultimate destination; the carrier's lien was gone, and his responsibility ended. 2 Kent Com. (6th ed.) 545. Chit. Con. (8th Amer. ed.) 378. *Dixon* v. *Baldwen*, 5 East, 175. *Wright* v. *Lawes*, 4 Esp. R. 82. *Leeds* v. *Wright*, 3 Bos. & Pul. 320. *Hurry* v. *Mangles*, 1 Campb. 452. *Spear* v. *Travers*, 4 Campb. 251. *Foster* v. *Frampton*, 6 B. & C. 107. *Sawyer* v. *Joslyn*, 20 Verm. 172. *Barrett* v. *Goddard*, 3 Mason, 107. 2d. Loup never took possession for the purpose of stopping *in transitu*. Stoppage *in transitu* is the assertion of a lien, which implies a general right of property in the vendee; and simply gives to the vendor a right to hold the property as a

pledge for the payment of the price, with a right either to dispose of it and apply the proceeds to the payment of his debt, or, at most, to rescind the sale if payment be not made within a reasonable time. When Loup & Co. took the leather as vendees by a bill of sale from Washington Hill, they waived their right to stop *in transitu*, as Hill waived his right to reject the goods; they took the leather by a title under Hill, and neither they, nor those claiming under them, can now set up a title under a stoppage *in transitu*, or rescission, which would be adverse to Hill's title. Chit. Con. 377. Lord Kenyon in *Hodgson* v. *Loy*, 7 T. R. 445. Park, J. in *Tucker* v. *Humphrey*, 4 Bing. 519. Shaw, C. J. in *Rowley* v. *Bigelow*, 12 Pick. 312.

*P. C. Bacon*, for the defendants. I. There was no absolute sale of the leather by Loup & Co. to Washington Hill; it was only a contract for its sale, if the leather, on arrival, should prove satisfactory to Hill; but it was never selected and identified, nor seen or accepted by Hill; but he gave a bill back; and the property in the leather never vested in him. Story on Sales, §§ 417–419, 422, and cases cited. 2 Kent Com. 468. *Warren* v. *Buckminster*, 4 Foster, 336. *Street* v. *Blay*, 2 B. & Ad. 463. If there was a sale, it was conditional on the giving of a note for the price; and that condition was not complied with, and had not been waived. *Hill* v. *Freeman*, 3 Cush. 259. *Tyler* v. *Freeman*, 3 Cush. 263. The giving back of a bill of sale, taken in connection with the letter written by Luther Hill, was not such a ratification of the transaction between Washington and Loup & Co. as to make it a sale from them to him; and was not an actual resale from him to them; but was in effect a rescission of a contract for a sale, before the sale became absolute, or any debt due; and this he might lawfully do, as the lien of Loup & Co. on the goods still continued, and the freight was unpaid. *Lane* v. *Jackson*, 5 Mass. 162. *Arnold* v. *Delano*, 4 Cush. 33. *Scholfield* v. *Bell*, 14 Mass. 40. *Feise* v. *Wray*, 3 East, 93. *Richardson* v. *Goss*, 3 Bos. & Pul. 119. The assent of Loup & Co. to the rescission, and their acceptance of the goods, must be presumed. Luther was their agent, and they ratified his acts within a reasonable time. *Lane* v. *Jackson*, 5 Mass. 162

31 *

II. But if here was a sale, Loup & Co. had and seasonably exercised the right of stoppage *in transitu,* or, at least, had a lien for the price. Story on Sales, §§ 331–347, and cases cited. 1 Parsons on Con. 489. *Naylor* v. *Dennie,* 8 Pick. 204. *Stubbs* v. *Lund,* 7 Mass. 456. *Coates* v. *Railton,* 6 B. & C. 422. *Arnold* v. *Delano, Lane* v. *Jackson, Scholfield* v. *Bell,* and *Feise* v. *Wray,* above cited. If the acts of the parties are susceptible of two constructions, the court will adopt that which will make the acts legal and valid, and secure the property to Loup & Co.

What Luther Hill supposed or intended to do is not material, as he was laboring under an entire misapprehension of facts. If all the facts claimed are established, the plaintiff cannot recover under *St.* 1841, *c.* 124. It does not appear that Washington Hill intended any preference ; and indeed he could not, for there was no debt due from him to Loup & Co.

SHAW, C. J. The court are strongly inclined to the opinion that, even if there had been a concluded agreement in New York for the sale of the leather, by Loup & Co. to Washington Hill, to be forwarded to Spencer by common carriers, there would have been a good right of stoppage *in transitu* by the New York house, and that this right was duly exercised. By the theory of the common law, a conclusive bargain for the sale of goods, at a price agreed, without actual delivery, so far vests the property in the vendee, that they are at his risk; but the vendor has a lien for the price, and is not bound to deliver them without payment. If sold on credit, and actually delivered, this lien is of course gone. But if agreed to be sold on credit, and delivered to a common carrier, to be delivered to the consignee or purchaser, though this is a good sale and constructive delivery, still, if the purchaser fail or become bankrupt before the goods have actually reached their destination, and the consignor, the vendor on credit, can stop the goods before the termination of the transit, he has a right to do so, and will thereby reëstablish his lien, so that neither the purchaser, nor his assignee or attaching creditor, can take the property without paying the price. The right of stoppage *in transitu,* therefore, is an extension, by the law merchant, of the lien for the price, which the vendor has befor. d livery, after a contract of sale.

What actually amounts to a stoppage *in transitu*, in a particular case, may be a question of difficulty. But it was very early held, that where the consignee, being a purchaser of goods on credit, finds that he shall not be able to pay for them, and gives notice thereof to the vendor, and leaves the goods in possession of any person, when they arrive, for the use of the vendor, and the vendor, on such notice, expressly or tacitly assents to it, it is a good stoppage *in transitu*, although the bankruptcy of the consignee intervene; and the goods revest in the consignor. *Atkin* v. *Barwick*, 1 Stra. 165. This was approved and confirmed in the case of *Salte* v. *Field*, 5 T. R. 211. The same principle was adopted in this commonwealth, though the facts led to a different result, in *Lane* v. *Jackson*, 5 Mass. 157.

In the present case, Washington Hill, having, by an investigation, ascertained his insolvency, before he knew of the arrival of the leather at the Spencer station, gave notice to his son Luther that he should not receive it, and, for that purpose, made a bill of it back to Loup & Co., and handed it to his son for their use, and requested him immediately to give them notice of it, which he did; and afterwards, and before the plaintiffs were chosen assignees, one of the firm of Loup & Co. came to Spencer and received the bill of sale from Luther, which had been left with him for them, and thus acceded to Washington's offer to rescind the sale. This brings the case within the authority of the cases cited, and others to the same effect.

But there is another ground which, in our opinion, is still more decisive for the defendants, and that is, that no conclusive contract of sale and purchase between Loup & Co. and Washington Hill was ever made; there was no delivery of the leather, actual or constructive, and no right of property in the leather ever vested in the vendee.

The facts show that Washington Hill went to Loup & Co. and found they had the kind of leather which he wanted, and after inquiry, they were willing to sell it to him at the usual credit. But, for some reason, the leather was not then selected, but the arrangement was left on this footing, that they would select leather of the quality he wanted, and the quantity he de-

sired, and forward it to him at Spencer by railroad, with a bill by mail, and if, on arrival and examination, he should find it satisfactory, he was to accept it, and forward his note, at the agreed term of credit, for the payment. This was a conditional bargain, upon a condition precedent; or, as we believe it is expressed in the more significant term of the Scotch law, a condition suspensive. Here, after the leather arrived at the station, there was no examination of it by Hill, no acceptance, no note given; on the contrary, notice was given that it would not be received or paid for, and this put an end to the provisional bargain. The fact that Hill put his renunciation into the form of a bill of sale could make no difference; it could not operate as a sale, because the property was already in Loup & Co., and not in Hill; but it was a decisive expression of Hill's determination not to conclude the former conditional bargain, and in the mean time, as far as he could, to put it out of his own power, and into the custody of a third person, for the original party. It was not a resale; for no property had vested in the first vendee.

There is a fact mentioned in the agreed statement, which we suppose was thought to have some influence in this case, to the effect that Luther Hill, one of those against whom this action is brought, supposed and believed that Washington Hill had bought these goods of Loup & Co. and given his note for them, that the property had vested in the vendee, and that the arrangement for making a bill of sale back was designed for the purpose of giving these creditors a preference; and so he could not be a *bona fide* purchaser without notice of the fraud, when he purchased the goods of Loup & Co. It is very true, that if the reconveyance by Washington Hill to Loup & Co. had been a conveyance of Hill's property to Loup & Co. by way of preference, it would have been fraudulent against the creditors of Hill; and the knowledge of that fraud, which Luther Hill had, would have prevented him from claiming them under a conveyance from Loup & Co., as a *bona fide* purchaser without notice, even if he gave a full consideration for them. But if Loup & Co. took the bill, without fraud, merely to regain their own property, whatever may have been the purpose of Washington Hill,

then the creditors of Hill could not have defeated such title of Loup & Co., and a transfer by them, who had an indefeasible title, not contaminated by any fraud, would make a good title to Luther Hill, although the latter had full knowledge of the original fraudulent purpose of W. Hill. The ground is this, that although a sale, to defeat the creditors of the vendor, is voidable, at the election of the creditors, by an attachment or other suitable mode, yet it is valid between the parties, and conveys a title defeasible only by creditors. The grantee is estopped, by his fraudulent participation in an attempt to defeat creditors, from setting up that title; for he shall not take advantage of his own wrong. But, having such title, he can transfer it. If he transfers it to one having notice of the fraud, and of the defeasible title of his grantor, he takes it *mala fide;* he is under the same estoppel for the same reason. But if he transfers it to one having no notice of such fraud, the title passes; and as he has committed no wrong to the creditors, nor aided in doing it, he is under no such estoppel, and takes the title purged of the fraud. This principle is important to a *bona fide* purchaser; otherwise, though he holds a perfect title himself, he might meet great difficulty in finding a purchaser who could safely make the purchase, after the fraud in the preceding transaction had become generally known. This principle, just in itself, is well established by authority. Brown on Sales, § 599. *Trull* v. *Bigelow*, 16 Mass. 406. On the grounds on which we decide, this principle is not essential to the present case; but the point having been raised, it seemed proper to allude to it.

As it appears to us that the determination of Washington Hill not to receive the goods of a confiding vendor, for the purchase of which he found that he could not make payment, whilst the transaction was inchoate and within his own power, originated in a just sense of honor and integrity, it is satisfactory to find that its validity is sustained upon strict principles of law.

*Judgment for the defendants.*